IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 28, 2020 Session

## ERIC L. PARKER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Sullivan County**
No. C65592          William K. Rogers, Judge

_____

### No. E2019-00893-CCA-R3-PC
_____

A jury convicted the Petitioner, Eric L. Parker, of aggravated domestic assault by reckless conduct, and the trial court sentenced him as a Range I, standard offender, to four years of incarceration. This court affirmed the Petitioner's conviction and sentence. *State v. Eric L. Parker*, No. E2013-02339-CCA-R3-PC, 2014 WL 5483015, at *1 (Tenn. Crim. App., at Knoxville, Oct. 29, 2014), *no perm. app. filed*. The Petitioner filed a timely petition for post-conviction relief in which he alleged that he had received the ineffective assistance of counsel, which the post-conviction court dismissed after a hearing. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and TIMOTHY L. EASTER, JJ., joined.

Kenneth E. Hill, Kingsport, Tennessee, for the appellant, Eric L. Parker.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Senior Assistant Attorney General; Barry P. Staubus, District Attorney General; and K. Kaylin Render, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

This case arises from the Petitioner's beating of his girlfriend with a metal rod. For this incident, in July 2011, the Petitioner was indicted for the intentional or knowing aggravated assault of a domestic abuse victim. Following a jury trial, he was convicted of the lesser offense of aggravated domestic assault by reckless conduct, a class D felony. *See* T.C.A. §§ 39-13-101(a)(1), -102(a)(1)(B)(iii) (2010). The trial court sentenced the

petitioner as a Range I, standard offender to four years of incarceration with thirty percent release eligibility. Both his conviction and sentence were affirmed by this court on direct appeal. *Eric Parker*, 2014 WL 5483015, at *1.

The Petitioner filed a timely petition for post-conviction relief alleging that his trial counsel was ineffective for failing to file a motion to suppress evidence against him. The post-conviction court summarily dismissed the petition. *State v. Eric L. Parker*, No. E2016-00298-CCA-R3-PC, 2016 WL 3753730, at *1 (Tenn. Crim. App., at Knoxville, July 8, 2016), *no perm. app. filed*. This court reversed and remanded the case for the appointment of counsel and the opportunity to amend his claim. *Id*. at *1. In both our opinions on the matter, we summarized the facts of the Petitioner's case as follows:

> On the day of the offense, the [P]etitioner, whom the victim had been dating for around a year, gave the victim two money orders totaling $750, and the victim placed the money orders in the pocket of her pants. *Id*. at *2. When the [P]etitioner subsequently asked her for the money orders, the victim, forgetting that she had changed clothes, thought that she had lost them. *Id*. The [P]etitioner began yelling at the victim and struck her with the back of his hand, knocking her to the floor. *Id*. The [P]etitioner then beat the victim repeatedly with a metal rod, and the victim's wounds required immediate hospitalization. *Id*. She testified at trial that she sustained permanent injuries in the attack, including scars, an injury to a tendon or ligament in her arm, and a hole in her thigh that was so deep that she could see bone at the time of the injury and that medical personnel were unable to close. *Id*. at *3. The victim's neighbor, father, and sister also testified consistently at trial with regard to the severity of the victim's injuries, and photographs of her injuries were introduced into evidence. *Id*.

> Several hours after the assault, the [P]etitioner was arrested. At that time, law enforcement officers searched the apartment where the victim and petitioner resided together and recovered "a barbell" from underneath their bed. *Id.* at *3. There was another weight bar, which was slightly longer, in the living room. *Id*. Photographs were taken of both bars during the search, and the victim identified the bar from the bedroom as the one used to beat her. The weapon was taken into evidence, but the photographs from the search were lost prior to trial. *Id*. The [P]etitioner, testifying on his own behalf at trial, gave a description of the assault that was largely consistent with the victim's testimony. *Id*. The only significant discrepancy in the [P]etitioner's account was his claim that he hit the victim repeatedly with a copper broomstick, and he agreed with the prosecutor's

statement that "basically the only thing you dispute is the fact that a weight bar was used. Everything up to this point you admit doing, it just happened to be with a broomstick is what your testimony is." *Id*. Moreover, the [P]etitioner confirmed that the victim had blood trickling down her arm and leg after the assault. *Id*. at *4.

Based on the aforementioned proof, the jury convicted the [P]etitioner of reckless aggravated domestic assault, which, as narrowed by the indictment, is committed when the perpetrator recklessly causes bodily injury to another and the assault involves the use or display of a deadly weapon. *See* T.C.A. §§ 39-13-101(a)(1), -102(a)(1)(B)(iii) (West 2010). On October 13, 2015, the [P]etitioner filed a handwritten pro se petition for post-conviction relief. In his petition, he alleged that he received ineffective assistance of counsel based on counsel's failure to file timely motions, to investigate the particulars of his arrest, to investigate the victim's background or medical records, to confer with him, or to file a motion to suppress illegally-obtained evidence "that the trial court did not reveal [until] the last moment." He further asserts that "[his] conviction was based on use of evidence gained pursuant to an unconstitutional search and seizure" and that the State failed to disclose exculpatory evidence during discovery."

On November 30, 2015, the post-conviction court issued an order summarily dismissing the pro se petition. With regard to the ineffective assistance of counsel claims, the court reasoned that the [P]etitioner made "sweeping assertions that but for the alleged deficient performance of his attorney that he might have gotten less time, a lessor included offense and/or that the result cannot be relied upon" but otherwise "failed to set out any factual allegations as to prejudice." The court emphasized that the [P]etitioner admitted to beating the victim with a copper broomstick in his testimony at trial and added,

> Given Petitioner's admissions before the jury and the fact that the Court of Criminal Appeals found that a copper broomstick could have been a deadly weapon, this Petitioner cannot show there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.

In regard to the [P]etitioner's additional claims, the court found that the post-conviction petition "d[id] not set out, as required, any allegations

(much less a full disclosure) of the factual basis for his grounds for relief" and "d[id] not include any allegations of fact explaining why each ground for relief was not presented in any earlier proceeding."

On December 17, 2015, the [P]etitioner filed a pro se motion to reconsider, along with a memorandum in support of the motion, alleging that he should have been appointed counsel and allowed time to amend his post-conviction petition. On January 25, 2016, the post-conviction court filed an order denying the motion to reconsider.

*Parker*, 2016 WL 3753730, at *1-2. On appeal, this court agreed with the post-conviction court that the Petitioner had failed to provide adequate factual support for his allegation of prosecutorial misconduct based on the State's failure to disclose exculpatory evidence. We similarly concluded that some of the other claims presented by the Petitioner were not colorable. We, however, held that, "to the extent that [the Petitioner] asserts that counsel was ineffective for failing to notice or seek to suppress the illegally-obtained evidence, the petition presented a colorable claim for relief sufficient to withstand summary dismissal." *Id.* at *4.

We noted that the Petitioner identified the metal bar under his bed, which was introduced at trial, as having been illegally obtained. He further claimed that, had counsel filed a motion to suppress, it would have changed the "evidentiary picture" in his favor. We concluded that "these collective allegations, if true, would establish a colorable claim for relief." *Id.* We further noted that, while the post-conviction court may ultimately be right that the Petitioner could not prove prejudice, he presented a colorable claim, stating "the ultimate success or failure of a petitioner's claims is not a proper basis for dismissing a post-conviction petition without conducting an evidentiary hearing. *Id.* (citations omitted). We remanded the case for an evidentiary hearing.

On remand, the parties agreed that the only issue being litigated was whether Counsel was ineffective for failing to file a motion to suppress evidence found as a result of a search of the Petitioner's home. The parties then presented the following evidence: Kathryn Amato testified that she owned Sunset Enterprises, a company that owned apartments. Her business owned the apartment that the Petitioner leased and that law enforcement searched in relation to this case. Ms. Amato testified that there was a provision in the lease that included that the Petitioner could not sublet the apartment or allow anyone to reside with him who was not listed on the lease.

During cross-examination, Ms. Amato testified that she never had a lease for that apartment that listed Misty Peters as a tenant. Ms. Amato said, however, that she was aware that Ms. Peters stayed in the apartment with the Petitioner, which was not

- 4 -

technically a violation of the lease because she "limit[ed] people to a two week duration." She agreed that she did not check the apartments and ensure that guests only stayed two weeks.

Counsel testified that he was appointed to represent the Petitioner for aggravated assault. He said that he visited the Petitioner in both the Sullivan County jail and the Washington County jail and that the two also met each time that the Petitioner had a court date. Counsel said that he and the Petitioner reviewed discovery. Counsel agreed that the State alleged that the Petitioner committed this offense with a weight bar that officers found under the Petitioner's bed during the search of the Petitioner's apartment.

Counsel said that officers went to the Petitioner's apartment after taking Ms. Peters's statement, and the officers did not have a search warrant. He said that the Petitioner had not consented to the search. Counsel said that he and the Petitioner discussed the weight bar at length because the Petitioner told Counsel that it was not the weight bar that the Petitioner used to beat Ms. Peters. Counsel said that their strategy therefore was to show that the weight bar did not match the photographs and medical records of the victim's injuries. A week before trial, the Petitioner sent him a letter in which he asked "suppression type issues" relating to the weight bar. Counsel said that he had already consulted with the Petitioner about why suppression was not the best strategy and would not be successful.

Counsel testified that he did not file a motion to suppress the weight bar in the Petitioner's case and that he believed he had discussed this strategy with the Petitioner. Counsel went on to explain the two basic reasons that he did not file a motion to suppress. First, Counsel believed that the officers had a reasonable suspicion sufficient to justify a search of the apartment when they arrested the Petitioner. Counsel expounded that Ms. Peters informed the officers that the Petitioner had committed an aggravated assault and that he may be armed. When officers arrived, there was another individual in the apartment, so the officers had a right to protect themselves and search places where someone might hide. Counsel said that the other individual was an underage male and that he and the Petitioner were playing video games at the time that the law enforcement officers responded to the apartment. Counsel opined that the officer's search amounted to a protective sweep of the apartment looking for danger.

Counsel said the second reason for not filing a motion to suppress that he and the Petitioner discussed was that their discussions revealed that Ms. Peters resided with the Petitioner in the apartment. The two had a volatile relationship, including previous allegations of domestic violence against one another. One or more of these allegations occurred at the apartment. As a resident of the apartment, Ms. Peters had stated that the

Petitioner had committed acts that amounted to aggravated assault, and she had made reference to a weapon in the home.

During cross-examination, Counsel testified that the discovery in this case indicated that Ms. Peters resided in the apartment with the Petitioner. Law enforcement officers had responded to the apartment in the past, and Ms. Peters indicated that she lived in the apartment. He also gleaned from the Petitioner's account of his history with Ms. Peters that the two lived together in the apartment. Ms. Peters testified under oath during the trial that she lived in the apartment with the Petitioner at the time of the assault. Counsel testified that he chose not to file a motion to suppress based upon trial strategy.

Counsel testified that, at trial, the Petitioner admitted to beating Ms. Peters but informed the jury that he had done so with a hollow copper or aluminum broomstick and not a weight bar. The Petitioner testified that he used the broomstick to "thwap" Ms. Peters in the legs in an attempt to get her to return his money orders. Counsel said that he did not seek to suppress the weight bar, so that the jury could compare the weight and feel of the twenty pound bar and compare it to the light hollow broomstick that caused Ms. Peters's "mostly superficial" injuries. Counsel said that, even had the bar been suppressed, Ms. Peters would still have testified that she was hit with a heavy metal bar, and the State would still have submitted the photographs of Ms. Peters's injuries.

During redirect examination, Counsel agreed that the State gave him Mr. Parker's record of arrest for this complaint. It listed the complainant as Ms. Parker, her address listed as 112 Rose Lane Road. Her statement to law enforcement officers listed the same address.

During recross-examination, Counsel testified that, despite Ms. Peters's listed address, she told law enforcement officers in her statement that she and the Petitioner lived together in his apartment. She also told the officers that she packed a suitcase with her clothing and belongings when she left the Petitioner's apartment. Her trial testimony confirmed that she lived in the apartment with the Petitioner, as did the Petitioner's own statements to Counsel.

Counsel stated that the Petitioner had told him that he intended to use the money orders at issue to rent a new apartment at another location, and he did not want Ms. Peters's name on the lease.

Detective Justin McConnell, a Kingsport Police Department officer, testified that he responded as a backup officer to the call in this case. The responding officer, Officer Ferrell, Detective McConnell, and two other officers met across the street as an "officer

safety" precaution before approaching the Petitioner's apartment. Detective McConnell explained that the complaint to which they were responding involved an assault and an alleged firearm discharge. As such, the officers wanted to ensure that they were not surprised by anyone in the apartment.

Detective McConnell testified that his primary purpose as the backup officer was to ensure that there was no immediate threat to the primary officer doing the investigation. As such, he and one other officer conducted a "protective sweep" of the apartment to ensure their safety. Detective McConnell testified that these sweeps may be conducted without a warrant, and one place officers may look is underneath a bed if someone could be hiding there.

Officer Nathan Russell, with the Kingsport Police Department, testified that he participated in this case. He said that the officers had neither an arrest nor a search warrant when they went to the Petitioner's residence. When officers knocked on the door, the Petitioner answered. Officer Russell testified that he conducted a protective sweep of the apartment, during which time he found a weight bar underneath the bed in the bedroom. He took custody of the bar.

During cross-examination, Officer Russell testified that the lead officer informed him that the victim had alleged that there may be firearms in the home. When they arrived, both the Petitioner and another person were present in the apartment. The officers conducted a protective sweep looking for other people. They looked under the bed as the officer noted "I've found people hiding under beds before."

Officer Brandon Ferrell, with the Kingsport Police Department, testified that he responded to a call from the hospital about Ms. Peters's injuries. He learned that there may be guns in the home, so he called for backup. When the other officers arrived, they all approached the apartment and knocked on the door. The Petitioner answered the door. Officer Ferrell stepped into the doorway and placed the Petitioner in handcuffs. The other officers conducted a protective sweep on the apartment to ensure that no one was hidden or armed in the home.

During cross-examination, Officer Ferrell testified that an arrest warrant is not required to make an arrest. He reiterated that officers did not search the home but only conducted a protective sweep to ensure their safety.

The Petitioner testified that he wanted post-conviction relief and a new trial. The Petitioner said that, shortly before his arrest, he and a young man from another apartment were in the Petitioner's apartment together. The Petitioner went to use the restroom, and a young man, who was in the living room, said that there was a knock at the door. The

Petitioner told the young man to answer the door, and he did while the Petitioner was standing behind him. The officers told the two men to sit on the ground, and the Petitioner informed the officers he was disabled. The officers therefore allowed him to stand and handcuffed him.

The officers informed the Petitioner that Ms. Peters was at the hospital and pressing charges against him, and the Petitioner said he wanted to press charges against her for stealing his social security check. The Petitioner said that officers put him into a vehicle and that he was not present while they were inside his apartment.

The Petitioner testified that he informed Counsel that there were multiple errors in the complaint. The first error was that he did not have a weapon. The second error was that he did not use a weight bar to hit the victim but that he "defended [him]self with a half a broomstick."

During cross-examination, the Petitioner denied that he and the victim lived together at the time of this incident. The Petitioner said that Ms. Peters forged her name on to his lease. The Petitioner said he did not remember sending a letter to Counsel in which he stated that the victim used his address. He then read the letter and acknowledged that it stated that Ms. Peters's last known address was his address, which was her listed address with the Social Services Department.

The Petitioner said that he "defended" himself by hitting Ms. Peters with a broomstick. The State then read the following excerpt from the Petitioner's testimony:

> I was hitting her. At first I was trying to intimidate her. I wasn't going to hit her with it, I was trying to – I was trying to scare her into giving me money orders. I wasn't trying to hit her. And like I said, [Ms. Peters] was coming at me, and then I started. I'd seen that she wasn't scared. . . . That's when I started hitting her. And was wouldn't give me the money order . . . . She wasn't scared enough, so [I] hit her with the broomstick.

Based upon this evidence, the post-conviction court denied the Petition. In its order, it found:

> The sole remaining issue concerns [the] Petitioner[']s Ineffective Assistance of Counsel claim for [Counsel's] failure to request a suppression hearing prior to trial. It is undisputed that the evidence obtained as a result of the search of [the] Petitioner's residence was a metal weight bar. It is further undisputed that [the] Petitioner agreed in his testimony that he hit

the victim repeated[ly] with a metal rod. [The] Petitioner also testified that he broke the broomstick over his knee prior to repeatedly hitting the victim.

[The] Petitioner argues that the copper broomstick was not a deadly weapon as required by the reckless aggravated assault theory. See T.C.A. § 39-44-106. The Court of Appeals denied this argument and on page 7 lists numerous "deadly weapons" which have been upheld. These include a plastic pen, pointed-toe cowboy boots, a folding chair, a cordless phone and a hairbrush. See *State v. Parker*, id. at 7. This Court finds the deadly weapon argument to be without merit.

Even assuming arguendo that a suppression motion was successful and the weight bar was suppressed, the jury would still hear the testimony of the victim that [the] Petitioner repeatedly hit her with a metal rod and [the] Petitioner[']s testimony that he hit her repeatedly with a copper broomstick after he broke it in half.

[Counsel] testified at length at the Post-Conviction Relief hearing regarding the suppression issue and his dealings with [the] Petitioner. He indicated he met with [the] Petitioner 8 or 9 times both at the Sullivan County jail and then Washington County jail. He indicated their primary focus was that the injuries were not caused by the weight bar. He recalls . . . "thinking I had already consulted with [the Petitioner] regarding why suppression wasn't our best avenue and that suppression would not have been successful." [Counsel] . . . testifies that suppression would not have been successful because the officers had a reasonable [cause] to search [the] Petitioner's apartment as a protective sweep and that the victim was a co-occupant of the apartment.

Finally, . . . [Counsel] testifies "not only did this Motion to Suppress idea not seem like a winning theory, it didn't seem like it was grounded or based on, I guess a colorable argument . . . . I don't have any reason to believe that [Ms. Peters] wouldn't have still testified that she was hit with a heavy metal bar and the injuries – the pictures of her injuries would have still been submitted to the jury." This Court agrees with these assessments of [Counsel].

The 3 officers that participated in the arrest also testified at the Post-Conviction hearing. Officers Justin McConnell, Nathan Russell and Brandon Ferrell describe in detail the night of the incident and why they did the limited protective sweep. This Court finds their testimony to be

credible and specifically finds they have shown they had a reasonable belief based on specific and articulable facts that the area to be swept harbored an individual posing a threat to those on the arrest scene. . . .

(citation omitted).  The court went on to hold that the Petitioner had not proven that Counsel's representation prejudiced him.  The court therefore denied his petition.

It is from that judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition for post-conviction relief.  He asserts that Counsel was ineffective for failing to file a motion to suppress the weight bar.  He contends that the officers did not conduct a protective sweep of the home but rather searched the home and that this was an unreasonable search.  The State counters that the Petitioner's contention is meritless because: (1) the record establishes that this was a strategic decision on Counsel's behalf; (2) the motion would not have been successful; and (3) even if successful, suppression of the weight bar would not have changed the outcome of the trial.  We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right.  T.C.A. § 40-30-103 (2018).  The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence.  T.C.A. § 40-30-110(f) (2018).  Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts.  *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)).  A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings.  *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001).  A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness.  *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution.  *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975).  The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy

and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In this case, the Petitioner cannot prove that he was prejudiced by Counsel's representation. Even were a motion to suppress granted, a highly unlikely and improbable scenario given the evidence, such motion would have suppressed the weight bar and such exclusion would not have rendered a different outcome. At trial, the Petitioner testified that he hit Ms. Peters with a metal broomstick. Ms. Peters's testimony was that the Petitioner beat her with a heavy metal rod. As the post-conviction court points out, even if the weight bar was suppressed, the evidence that the victim was hit with a metal rod remained for the jury's consideration and was certainly sufficient evidence to support the conviction. The Petitioner is not entitled to relief.

## II. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE